**Clair John KILLORAN, Plaintiff,**

v.

**Ben FINEMAN and Bertram H. Kasendorf, Defendants.**

No. 12984.

United States District Court
E. D. Pennsylvania.

Nov. 29, 1954.

Robert C. Grasberger, Philadelphia, Pa., for plaintiff.

Harry A. Takiff, Philadelphia, Pa., for Fineman.

Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Kasendorf.

GRIM, District Judge.

This is an interpleader action brought by plaintiff to determine the disposition of a certain promissory note made by defendant Ben Fineman payable to defendant Bertram H. Kasendorf and deposited with plaintiff as escrow agent. The action also seeks a determination of the liabilities on the note as between the two defendants. Jurisdiction is based upon diversity of citizenship.

In the early part of 1949 defendants entered into negotiations for the sale by defendant Kasendorf to defendant Fineman of the stock of P–K Motors, Inc., a Delaware corporation operating an automobile agency.[1] The stock sale was consummated by a written agreement dated June 10, 1949. On this date Kasendorf was in the process of negotiating with the Internal Revenue authorities for a settlement of the corporation's federal income tax liability for the years 1946, 1947 and 1948.

The contract provided for the sale of all the stock of the corporation to Fine-

1. The negotiations and sale also included the transfer of the stock of Kasendorf Realty Corporation. This sale is not involved in the present proceeding.

man for $70,000, this amount to be reduced *pro tanto* if a "final audit by the Bureau of Internal Revenue results in the determination, assessment and payment of deficiencies in Federal Income Tax . . . for the years 1946 [2] and 1947." [3]

The contract further provided for the reduction of the purchase price to the extent of any "determination, assessment and payment of tax liability * * * for the year 1948 in excess of $49,117.-44." [4]

Of the $70,000 sale price, ·$57,500 was paid in cash. The remainder, $12,500, was paid by Fineman's promissory note which was put in escrow with plaintiff, subject to the following provisions of the contract:

"The said $12,500.00 note of the Purchaser [Fineman] shall be held in escrow until the final assessment and payment of 1946, 1947 and 1948 tax liabilities of Motors and Realty [the corporation] whenever the same shall occur, whether the result of agreement between the taxpayer (acting subject to the control of the Seller as before provided) or the result of litigation [5] and judgment of a court having jurisdiction in the premises. * * *

"Said note shall further be held by the Escrow [plaintiff] to secure the obligation of the seller [Kasendorf], in certain contingencies, to refund a portion of the purchase price of the subject securities [i. e., the corporation's stock] to the Purchaser. * *

"The Escrow shall deliver the $12,500.00 promissory note to the Seller only in the following events:

"(a) That Purchaser and Seller shall jointly direct him in writing

to deliver said note bearing endorsement of partial payment of principal in a stipulated amount to the extent of the Seller's liability, if any, for reduction of the purchase price of the subject securities as provided in paragraphs 5(a) and (b) [the pertinent parts of which are quoted above]. * * * " [6]

In 1951 Kasendorf made demand on the plaintiff, the escrow agent, for the note, but Fineman refused to allow the plaintiff to deliver it to Kasendorf. Plaintiff then instituted this interpleader action against defendants Kasendorf and Fineman. In his answer Kasendorf has asked for judgment on the note, with interest at two and one-half percent in accordance with its terms.

The purposes of the above-quoted contractual provisions for putting the note in escrow and for reducing the amount payable on the note are clearly discernible from the language of the contract itself and from the other evidence in the case. The purposes and effects of this arrangement were (1) to impose upon Kasendorf, the prior owner and seller of the corporation, the obligation to reimburse Fineman, the buyer and new owner of the corporation, for its payment of any tax deficiencies which might be assessed against it for the years 1946 and 1947 and any tax liability in excess of $49,117.44 for the year 1948, and (2) to insure the discharge of Kasendorf's obligation through the device of reducing Fineman's liability on the note and thereby reducing the purchase price of the corporate stock to the extent of any additional tax payments as specified above.

When the sale was consummated Fineman took over the operation of the business which resulted in great losses during the remainder of 1949. On May 10,

2. Defendants have agreed that there was no deficiency for the year 1946 and defendant Fineman is not now making any claim concerning 1946.

3. Contract, Par. 5(a); Complaint, Exhibit "A", p. 5.

4. Contract, Par. 5(b); Complaint, Exhibit "A", p. 5.

5. It was further provided in detail that the Seller, defendant Kasendorf, was to have full control of negotiations and litigation concerning these possible tax liabilities. Contract, par. 5(e) and (f); Complaint, Appendix "A", pp. 7–8.

6. Contract, par. 7; Complaint, Exhibit "A", pp. 9–10.

1950, P–K Motors was adjudicated a bankrupt.[7]

Since there was no tax deficiency for the year 1946 and since the income tax for 1948 did not exceed $49,117.44,[8] Fineman is not now making any claims concerning those years. He is, however, claiming a credit toward the amount due on the note [9] by reason of an alleged tax liability of the corporation for the year 1947.

The facts in reference to·the corporation's tax situation for the year 1947 are these. In 1948, P–K Motors filed an original and an amended income tax return for the year 1947, together showing a tax liability of $19,197.92. In 1949 these returns were audited and on May 5, 1950, a notice of proposed additional assessment in the amount of $15,493.06 was issued. In 1950 a protest was filed against the Revenue Agent's findings and a conference was held. As a result of this conference the figure of $15,493.06 was reduced to $4,718.86. No assessment was entered on the basis of the conferee's report, but on the contrary an overassessment of $26,220.58 was allowed for the year 1947. This overassessment resulted primarily from the tax carry-back of losses amounting to $32,806.06 sustained in 1949. In brief, the carry-back of the 1949 losses cancelled out the· corporation's potential tax liability for 1947.

The parties obviously did not foresee losses in 1949 so great that by virtue of the carry-back provisions the entire tax liability for 1947 would be cancelled.' They therefore did not specifically provide for this situation in their agreement.

It will be remembered that before the purchase price of the corporation's stock would be reduced (more specifically, before the amount due on the note would be abated), three things were required: (1) a determination, (2) an assessment, and (3) payment of a tax deficiency for 1947.

Kasendorf contends with considerable persuasiveness that there was no corporate income tax "deficiency" for the year 1947 and there was no "determination" or "assessment" or "payment" of any deficiency for that year. With respect to the words "deficiency", "determination", and "assessment" Kasendorf's contention would probably be correct if we were to interpret those words as would a tax lawyer. Whether the parties to the contract used the words "determination" and "assessment" to mean anything more than ascertainment, as Fineman contends, is not clear and need not be decided, for it is undisputed that there was no "payment" of any tax deficiency for the year 1947.[10] The word "payment" in the contract can have only one meaning both to a businessman and a tax lawyer. The word "payment" is used in a literal sense and it means precisely what it says. Since no corporate income tax deficiency was paid for 1947, I hold that Fineman is not entitled to a reduction in the purchase price and that therefore the note must be paid in full.

Accordingly, a proposed judgment may be submitted ordering plaintiff to deliver the note to defendant Kasendorf and entering judgment in favor of defendant Kasendorf and against defendant Fineman in the amount of $12,500 with interest at two and one-half percent from the date of the note to the date of entry of judgment.

---

7. The bankruptcy estate has since been settled and the trustee in bankruptcy discharged.

8. See note 4, supra.

9. Fineman admits that Kasendorf is entitled to possession of the note.

10. A reading of Paragraphs 5 and 7 of the Contract clearly demonstrates that there is no merit in Fineman's contention that "payment" of a deficiency for 1947 is not a condition precedent to a reduction in the purchase price. These paragraphs are quoted in pertinent part in the body of the opinion and are cited in notes 3 and 6, supra.